Ms. Gassman. Good morning. May it please the court. Kayla Gassman for the appellant Juan Jose Ramirez on this appeal from his conviction for alien transporting. In this case the district court erred in denying Mr. Ramirez's motion to suppress the evidence resulting from the border patrol agent did not have sufficient specific and particularized suspicion that Mr. Ramirez was engaged in illegal activity. At the point where the agent first encountered Mr. Ramirez. I hope you agree that our case law is all over the landscape on this question. Or if you can figure out a line that's consistently reliable over the last 30 years it would be a big help. I don't think anyone can disagree that the case law is a little bit all over the place. I do think there are some cases that are more like this case that may shed some light on how the court should interpret some of the facts in this case. Here for example there was no specific finding by the district court that the passengers were attempting to hide. And that has been there's one case United States versus Soto where the panel and the district court found that a passenger in that vehicle was making what it called an explicit attempt to conceal himself from the agents. I believe in that case the first time that the agent encountered the vehicle the window was rolled down and they could see a passenger plainly in the back seat. And then they pulled out to follow the vehicle and the next time that they encountered the vehicle the tinted windows had been rolled up and the passenger in the back seat had dropped out of sight. And then as the agent drove alongside that car and in front of that car they could see through the windshield the passenger attempting to conceal himself in the back seat. And so the court called that a very explicit attempt to hide and specifically noted that there was no other explanation for that conduct other than an attempt to hide. And so it gave quite a bit of weight to that specific fact. In this case did the district court make reference to the passengers? The district court did make reference to the passengers but did not make a finding of attempt to hide that's anywhere near the level of what was present in Soto. Well but I mean isn't that wasn't it kind of implicit though in other words I'm sure that the I'm sure it's been urged that the presence of the what the passengers did or didn't do inside the vehicle was a was a factor. Yes and but I think it's important here to look at what the district court actually said about the behavior of the passengers. So here in the district court's order denying the motion to suppress at page 201 of the record the district court described that behavior as the apparent attempt to hide or at a minimum sneak peeks at the trailing border patrol vehicle by those in the back seat. So the district court does recognize that there was an apparent attempt to hide but then qualifies that by saying but clearly the minimum behavior that he's finding occurred was the attempt of the passengers to turn around and look at the trailing border patrol vehicle. And I think we have to read that in conjunction with what the court says earlier about that behavior. So earlier in the order the district court is describing the testimony of the material witnesses who were aliens who were present inside the vehicle and in describing that testimony the district court describes that one of the aliens testified that someone in the back seat was turning around to look at the trailing border patrol vehicle and the district court says that was that quote the alien kept looking back at the border patrol vehicle a movement consistent with that described by agent Espinel. So if you read that with the district court the district court's description of that behavior in conjunction with its later parenthetical that at minimum the passengers were attempting to sneak peeks at the border patrol vehicle I think it's clear that what he's finding is that they were turning around to look at the vehicle and the agent may have inferred that that behavior was consistent with attempts to evade detection but fall short of the explicit attempt the affirmative attempt to hide that was present in CBO. Well it isn't only an attempt to hide that's relevant it's also being extremely nervous and turning around and looking at the border patrol vehicle. So I understand that question. Maybe not just once but repeatedly is certainly evidence of nervousness. Right and I think on that point I think there are there are other cases that discuss the behavior of a driver or passengers in a car who are potentially reacting to the actions of a border patrol vehicle. So for example here when the agent first encountered the vehicle he was parked in the crossover of a divided highway and he had his high beam lights shining out across the northbound lane so he could see into the interior of the passing cars and that's when Mr. Ramirez's vehicle drove through those lights the Mr. Ramirez the agent testified he kind of ducked behind his hand which the agent perceived as suspicious and at that point the agent then pulled out and began to overtake Mr. Ramirez's vehicle and so is rapidly approaching from behind to the point where he can read the license plates and it's at that point where he testifies that Mr. Ramirez swerved to the far right of the road and then corrected which the agent said is consistent with the driver trying to get a better look at the vehicle approaching from behind and that it's at that point where he also testified that the passengers were popping up and down so that the turning around behavior that the district court found which could perhaps be nervousness or at least consistent with being aware of the location of the law enforcement agent but here cases from this court also acknowledge that that behavior could also be equally consistent with the innocent behavior of just paying attention to who's approaching you that quickly from behind and being aware of the location of that vehicle so the behavior is it's more ambiguous it could be consistent with nervousness it could be consistent with you know being concerned about the border patrol agent but it's equally consistent with simply reacting to the agent flashing or shining his headlights into the car and then rapidly approaching the vehicle from behind so it's not that those facts aren't relevant but it's that where those are the only specific and particularized facts which here it's my argument that those are the only specific and individualized facts supporting reasonable suspicion alone they're not sufficient on the factor considering proximity to the border in the district court there seemed to be some disagreement the agent testified the stop was 45 to 46 miles north of the nearest port of entry judge Hainan says that Ramirez offered evidence suggesting it could be up to 70 miles and then judge Hainan says while not an irrelevant factor considering the historical importance given by the courts of the 50 mile zone the court finds the precise location of the stop is not controlling so was there an actual finding on proximity no I don't believe there was an actual finding on proximity the district court seemed it's my reading of the district court's order that he didn't think it was necessary to make a specific finding about proximity but later he does seem to I think say the proximity factor is a thumb on this government side right I think he he gives it relevance and notes that it's relevant in the context of knowing that smugglers are more likely to be operating in areas that are closer to the border but I think in terms of this court's case law that that gives great importance to this 50 mile zone from the border I think the court was the district court was noting that that's not a controlling factor in the case because first of all he doesn't make a clear finding about whether it's within 50 miles or outside 50 miles but are you still contesting that it seemed to me in your brief you're sort of conceding it's within I think what we're conceding that the location of a stop is ambiguous that the court could have found that it was 46 47 48 but I think I believe both parties would agree it's fairly close to that 50 mile cutoff potentially give or take a few miles but that's not controlling here because the cases that discuss the importance of that 50 mile cutoff do it in the context of discussing the reasonableness of an inference that the trip originated at the border and the courts the cases have been very clear that that they've called it a threshold consideration they've called it an element that's of vital importance whether or not the trip originated at the border and here the district court found it unnecessary and necessary to make a specific finding because he also found that no one in the case had any reason to believe that the trip originated at the border and even if the agent had initially had that belief or made that inference that would have been negated by the fact that prior to the stop the agent ran Mr. Ramirez's license plates and discovered that the truck was registered to Mr. Ramirez in San Benito Texas which is a city directly on highway 77 which is the highway where the stop was made that's between the stop and the border so it's a it's he was a local registered truck on a direct route from where the stop was made to where the truck was registered so that would have negated any inference that the trip originated at the border as opposed to originating at the place of registration. What about the the factor of the particular officers not only as officers in their career but also their experience and knowledge of the area tell us what the facts are there and which way it cuts. That that certainly is one of the generalized factors that the court has found to be relevant in other cases here it was you know we don't don't argue that the agent was an experienced agent I believe he had about six years on the border patrol had been patrolling this specific area for between nine and ten months at the time of the stop at the time of the stop during which time he had made 150 arrests so it is a fairly experienced agent he did testify to the patterns of smuggling in the area to the fact for example that he didn't know why but the peak smuggling times were Tuesday Wednesday and types of vehicles favored by smugglers were pickups and SUVs and that mr. Ramirez was driving a pickup so he had familiarity with those sorts of patterns but here I think it's important I don't think that experience of the agent can elevate otherwise unremarkable or general factors into reasonable suspicion where the specific and particularized facts are not otherwise present the reason I'm asking you about that and excuse me I don't mean to interrupt you but while you have time you properly cited the Arona Sanchez case which is an old case 1981 but in looking at all these string of inconsistent authorities you know it may be sort of the first one in our rule of orderliness so it's an important case for us to look at and the reason I'm calling your attention to the end again I've been in your place I would have cited it as well as favorable to you to your client but the one thing that I noticed about that case is that the court after going through all the factors and announcing the result at the very end is at last sentence of the opinion we give substantial weight to the fact that these agents were new to the area and we're not familiar with the residents their vehicles or traffic patterns so that panel seems to have put a great deal of weight on that experience factory and deciding there to suppress right and I other than the experience of the agents I do agree with you judge Smith that Arona Sanchez is a very a case that's fairly similar to this one and that it occurred next to it next to a checkpoint on a road that was often used to circumvent checkpoints there was a light in the face in a similar way that the agent was shining the lights onto the traffic here you know the court I think was simply making the point in Arona Sanchez that in other cases it had given great weight to the familiar familiarity of agents with for example local traffic in a very rural area where the agents knew local residents knew the vehicles of local residents and that was not present in Arona Sanchez here I think that's that's a much less persuasive factor where you know it was it was a but was also a route that was used by everybody it's a route that's used by general population traffic by work traffic the road can be accessed by several cities and towns in between the area of the stop and the border including the area where mr. Ramirez's truck was registered but but that's as you well know that's that's often the situation I mean we we have lots of cases that arise on interstate 20 in the Odessa area as you as you well know which is a lot further from the border but oftentimes we have findings that the court takes into consideration that even interstate 20 is is a well-known route for alien and drug trafficking right in those cases I think the court has required something additional on top of those general factors so it's it's not sufficient that there's a general pattern of smuggling unless there's something additionally specific and particular about the particular trip well that that's that's right but here you have the agent's experience and you have the the behavior of the passengers as additional factors not to mention being within the 50-mile zone well I think what you have is the behavior of the passenger than a driver that's consistent both with potentially attempts to evade detection but fall short of an explicit attempt to hide and that is also consistent with the way any driver or any passengers might react in a similar situation so it's equally consistent with innocent behavior as with suspicious behavior so it's a relevant fact but not on its own sufficient to justify the stop all right thank you I guess when you save time for rebuttal miss glory may it please the court and a calorie on behalf of the United States asking this court to affirm the denial of the motion to suppress picking up where counsel just left off I think it is important to look at the totality of the circumstances here through the lens of the agent this agent was experienced he had six years with the Border Patrol in this area and more than that he had testified that he had been patrolling and he had experience in this precise area of the stop for the past nine months during that time he'd made a hundred and fifty arrests for alien smuggling so this was a an agent who was experienced generally but also with this specific area he testified as to experience he testified as to the information that he received from the Border Patrol information the crews that came out and they looked through the the fire breaks for smuggling and drop-off he testified as to all this information that he had prior prior to his position at the crossover on this highway and everything that he saw was consistent with his experience his learning his information about the area when he saw Ramirez come through he was parked at the crossover his lights were on shining across the highway the mr. Ramirez drove through as he did he shielded his face he ducked down a little bit and the agent saw that there were numerous people in the truck and the truck was consistent with vehicles that were typically used for drop-offs and smuggling in the area so he pulled out he followed them he sped up to them the stop did he when he first saw the vehicle it was 45 46 miles from the Mexican border there's testimony to support that it wasn't disputed below the what some of the inconsistency was is where the actual stop occurred whether that was within the 50 miles or whether it was out but the case law is clear that it doesn't matter where the ultimate stop was it's where you first initially saw the vehicle or saw the defendant and here it was about the 45 46 mile marker so as he pulled up behind him he followed him for about I think three to five miles is what he license plate he ran it at that point he could see people ducking popping up and down as he said he ran the license plate he found out who it was registered to see the driver swerved to the right the agent interpreted that to mean that they were trying to keep track of him and noting where he was and at that point he decided that he was going to pull them over and conduct an immigration check one thing that when I look at the briefing in a case one thing that causes my antenna to go up is when one party relies substantially on what seems to be a very close case on point and the other party doesn't even mention it and in that regard you didn't mention at all the Arona Sanchez case which factually is is pretty close so can you I don't know why you didn't mention it except if it's a damaging case that you wanted to avoid but can you discuss the facts there and and why that case would not be if not absolutely controlling at least highly persuasive to us well it wasn't left out quite frankly by oversight not and it's a way to avoid it as your honor pointed out in the beginning there are a number of cases on this topic and they go every which way so the I think what's dispositive between that case in this case is the experience of the officers here we do have an experienced officer six years in this position nine years in this area of this stop 150 arrests he was aware of the vicinity he was aware of the traffic he knew about the times of nights the days of weeks he was very intimately familiar with this area the traffic that goes through whether it was regular traffic or smuggling traffic and I think that is dispositive it is a factor that the court relied on it's a factor that the courts rely on in all of these cases whether they be close or not and I think that is a distinguishing factor between that case and what we have here what's the best case upholding a stop for you I think we have Giacomo which is a very a very border it satisfied the the proximity factor there there was testimony regarding the illegal trafficking in the area the the makeup of the vehicles used the fact that there had been some information about illegal trafficking there there was information about Kansas narcotics in the area that were that was a narcotics case but narcotics in the area going to Kansas there was a Kansas license plate there there was evidence the car had taken an indirect route and that I mean I agree that's that's one of the close cases these are these all you can have some fine distinctions but as I said that was a case there was evidence there was an indirect route it was very close to the border and there was a dissent well I think I think judge Parker called it a concurrence but it was effectively a dissent which tends to indicate that one that's a that was itself a so there we have there I think one of the factors that I point out in my brief that was similar here is you have going back to this whether or not they were hiding or slouching or just trying to avoid detection there you had the number of passengers in the back they were slouching over and the court found that although ordinarily fitting with innocent travel it was one of the factors that could be of the other factors so I think that from all of these cases you can pull factors that are similar here and some that aren't and I think it's the question of the totality of the circumstances viewed from the agent's experience I mean anytime you get cases that are as fact-bound as these you're going to have a whole series of uneven if you look at it from the appellate standpoint you're going to have uneven results but but the themes the basic themes of these cases are the same at least it seems to me they are your honor and I think that's why here you look at it through the agents experience the area the drivers behavior the passengers behavior the type of vehicle the up-and-down of the number of people in the vehicle all of these factors are common themes and they're all present here and a district court properly denied the motion to suppress and based on those facts the proximity to the border there is our case loss seems to suggest that the 50 miles that threshold was created because then you can infer that someone came across the border how do you deal with that in a situation where the evidence actually indicates and I think the district court found here that there wasn't a basis to believe that there was a border crossing with this vehicle it's true the agent testified he did not know where the vehicle came from the registration came up from San Benito so there was and there was no I believe evidence of recent border crossings that morning so the agent didn't necessarily link it to a border and crossing but what is important and what the district court did highlight is the fact that this did occur within 50 miles which I think is still important given the area given the proximity to the border but also that it occurred south of the immigration checkpoint I think that's a factor and so while the court didn't particularly rely on the 50 mile issue or factor he did point out the proximity to the border and the fact that this did occur south of the immigration checkpoint and to him that was an important factor combined with all of the other factors that were here I don't think the I don't correct me if I'm wrong but I don't think the case law actually requires that suspicion that that that same vehicle crossed the border but rather that there was trafficking across the border that the vehicle was was carrying we had a case within the last couple of years where a vehicle traveled from San Antonio south on I-35 and was picking up alien children on I-35 who had crossed the border but there was no issue about whether the car had ever crossed the border because it did not. I agree your honor to go somewhat off topic I don't think that perhaps the law originated with the crossing the border as being determinative but I think that the law has developed and the facts and the types of cases that we see have developed where as the court noted you get you know numerous vehicles involved you pick up you drop off and that seems to be what we see and I think that the proximity to the border and the fact that originated from the border area is still important and I think that's what this court looks at you can find some language that still from the older cases that really points to crossing the border and then I think the further we go the more recent cases we get they want the destination to be from the border area and the closer it is to the border I think that becomes more important. Here there's no indication it crossed the border I don't believe that's dispositive for the factors that I stated before. It's near the border it's south of an immigration checkpoint these are still factors that are very important and very relevant. All right thank you. Thank you I'll rest on my breath. Ms. Gassman you've saved time for rebuttal. Yes I will try to cover just a few points as briefly as I can. So here first I think on the Arona Sanchez case Judge Smith as you mentioned that case does mention that the agents in that case were new to the area and that was one factor in the analysis but I think it should also be noted that that case also did give significant weight to the fact that there was no reason to believe that the car in that case had originated at the border. You're certainly right about that and you're reading the case correctly. The point I was trying to make was that for whatever reason this particular panel after going through the whole analysis put that at the very end and re-emphasized it which tells me that that was a tipping point in the panel's decision. Okay and you know as it sounds like you are very familiar with that case also involved the lights being flashed into the car and the panel said you know that's a slight weight where that would be a reasonable reaction to kind of drive erratically or be startled by that when you are surprised by the lights of a vehicle being shown into the interior of your car. I also wanted to address briefly a couple of the cases that the government and I think Judge Costa mentioned as potentially being cases that would support the government here. So first I think Jack Winnow in my view is a very different case than this one that in that case the car tripped sensors in a very remote area of Big Bend and then when the agents encountered it they saw that it appeared to be a work truck on a Sunday morning which was a very unusual time to see a work truck. The truck had Kansas plates. It was very unusual for someone working in the park to have Kansas plates. And there had been warnings about that there might be a vehicle coming. There had been warnings about the vehicle coming, tripping the sensors and there was really essentially no typical reason for that particular truck to be in that location at that time unless something unusual was going on. I think that's similar to Zapata-Ibarra which Judge Costa mentioned. In that case I think it was 24 miles from the border and the court did make an inference that that trip did originate at the border because the vehicle was encountered on a highway that the agents knew was very frequently used to circumvent a checkpoint on a nearby separate highway and the registration of the vehicle was not local and in fact made the route that the vehicle was on a very indirect, an unusual route to be on and actually if you read the Zapata opinion carefully the panel actually says there was virtually no reason for that vehicle to be on that road at that time of night unless it was using that road to circumvent the checkpoint. That's a level of specificity that's just not present here. The agent agreed there was nothing unusual about the traffic patterns in this case. There was nothing unusual about Mr. Ramirez's truck being on Highway 77 north of Raymondville with lots of other SUVs and pickups that the agent didn't stop. And I think also it's important to note in Zapata-Ibarra even though the court did find reasonable suspicion in that case, the court noted that slouching is only given a little bit of weight so this behavior of passengers that could be consistent with an attempt to evade detection is relevant but is given only a little bit of weight when there could also be innocent explanations, for example passengers slouching to rest or something like that. And the court was very clear in Zapata that the driver slowing and swerving or driving somewhat erratically in response to a Border Patrol agent rapidly approaching from behind was given little weight because that's typical behavior for a driver who is noticing a car rapidly approaching from behind. On the experience of the agents, I would point to Rangel-Portillo which is a case that the facts are quite different. It was within I think 500 yards of the border. It was at a Walmart and the agent listed these things like they were wearing their seatbelts which he thought was weird. They didn't have shopping bags even though they were in a Walmart and the government essentially asked the court to defer to the agent's expertise that this was suspicious and the court said no, like the court has an independent duty to judge whether the factors that the agent specifies as suspicious actually are suspicious. Here what I think is important to keep in mind is that the only facts that distinguish this trip from a trip by any other locally registered SUV or pickup with multiple passengers on a Tuesday, Wednesday or Thursday night are what is typical reactions of the driver and the passenger to the actions of the Border Patrol agent shining his headlights into the car and then rapidly approaching the car from behind. Here those are just insufficient for reasonable suspicion and the district court should be reversed. All right. Thank you, Ms.